FILED

2014 JAN 23  PM 2: 38

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
        DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

1-STOP FINANCIAL SERVICE CENTERS OF
AMERICA, LLC,
                    **Plaintiff,**

-vs-                                                          Case No.  A-13-CA-961-SS

**ASTONISH   RESULTS,   LLC   f/k/a   Astonish
Results,   L.P.;   THOMAS   COUTURE;   and
CREEKRIDGE CAPITAL LLC,**
                    **Defendants.**

_____

## O R D E R

BE IT REMEMBERED on January 7, 2014, the Court called a hearing in the above-styled

cause, and Plaintiff 1-Stop Financial Service Centers of America, LLC, and Defendants Astonish

Results, LLC, Thomas Couture, and Creekridge Capital LLC, appeared by and through counsel.

Before the Court are Defendants Astonish Results and Thomas Couture's Motion to Dismiss and

Alternatively, Motion to Transfer Venue [#10], Plaintiff's Response [#24], and Defendants' Reply

[#27]; Defendant Creekridge Capital LLC's Motion to Dismiss, or in the Alternative, to Transfer

Venue Pursuant to FRCP 12(b)(3) and 28 U.S.C. § 1406(a) [#11], Plaintiff's Response [#23], and

Defendant's Reply [#26]; Defendant Creekridge Capital's Motion for Leave to File Sur-Reply to

Defendants' Motion to Dismiss, or in the Alternative, to Transfer Venue, and Motion to Sever [#29],

and Plaintiff's Response [#33]; Defendants Astonish Results and Thomas Couture's Motion to Stay

Discovery and Motion for Protective Order [#35], and Plaintiff's Response [#41]; and Plaintiff's

Motion for Leave to File Sur-Reply in Opposition to Defendants' Motions to Dismiss [#37]. Having

reviewed the documents, the relevant law, and the file as a whole, the Court now enters the following opinion and orders.

## Background

Plaintiff 1-Stop Financial Service Centers of America, LLC, (1-Stop) is an insurance agency, which contracted first with Defendant Astonish Results, LLC, (Astonish) to provide website design, marketing, social media, and search engine optimization services. Defendant Thomas Couture was the salesperson who directly marketed Astonish's services to 1-Stop. 1-Stop and Astonish entered into a Website Development Design and Marketing Equipment and/or Software License Agreement (the Marketing Agreement) on September 13, 2012. This contract contains the following forum selection clause:

> This Agreement shall be governed by, and construed in accordance with the laws of the State of Rhode Island excluding its conflict of law rules. All actions and proceedings, interpretations, and any matters regarding enforceability or effect arising out of or relating to this Agreement shall be brought in any Rhode Island state or federal court sitting in the City of Providence, Rhode Island.

Pl.'s Resp. to Defs.' Mot. to Dismiss and, Alternatively, Mot. to Transfer Venue [#24-2], Ex. 1-A (Marketing Agreement), at 2.

After entering into the contract with Astonish, 1-Stop then entered into a separate agreement (the Lender Agreement) with Defendant Creekridge Capital, LLC, (Creekridge), a financial services company, which leased specific equipment and software to 1-Stop. In short, Creekridge provided 1-Stop the financing for 1-Stop's contract with Astonish. The Lender Agreement contains its own separate forum selection clause:

> CHOICE OF LAW: THIS AGREEMENT WILL BE GOVERNED BY, ENFORCED IN AND INTERPRETED ACCORDING TO THE LAWS OF THE STATE OF

MINNESOTA.  YOU CONSENT TO EXCLUSIVE JURISDICTION IN THE
STATE OR FEDERAL COURTS OF MINNESOTA.

*Id.*, Ex. 1-B (Lender Agreement), at 2.

1-Stop later became dissatisfied with the performance of the contracts, and filed a lawsuit

in Texas state court against Astonish, Couture, and Creekridge.  The causes of action are: (1) breach

of contract against Astonish, and (2) fraud in the inducement against all Defendants.  *See* Notice of

Removal [#1-3], Ex. C (Original Petition), at 12–14.  1-Stop seeks declaratory relief against Astonish

and Creekridge establishing the contracts as unenforceable, rescission against Astonish and

Creekridge, attorneys' fees against all Defendants, and punitive damages against all Defendants.  *Id.*

at 14–17.

After removing the case to federal court on November 4, 2013, Astonish and Couture filed

a motion to dismiss or, in the alternative, motion to transfer venue.  There are, in essence, three

layers to this filing.  First, there is a motion to dismiss based on improper venue according to Federal

Rule of Civil Procedure 12(b)(3) because the forum selection clause directs any lawsuit arising out

of the contract between 1-Stop and Astonish to be brought in Rhode Island.  Second, there is the

alternative motion to transfer pursuant to 28 U.S.C. § 1404(a) based on the forum selection clause.

Third, there is the alternative motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6)

and failure to state a claim upon which relief can be granted.

Creekridge, after filing a plea in abatement, motion to dismiss, and answer in state court,

consented to removal of the case to federal court.  Creekridge subsequently filed in federal court its

own separate motion to dismiss or, in the alternative, motion to transfer venue.  The basis for

Creekridge's motion is Rule 12(b)(3) and 28 U.S.C. § 1406(a), and Creekridge asks the Court to

dismiss the claims against it due to improper venue.  In the alternative, Creekridge wants the claims transferred to a proper venue, and the forum selection clause in the Lender Agreement mandates Minnesota as the sole venue for any disputes between 1-Stop and Creekridge.

1-Stop opposes both of these motions, arguing neither of the forum selection clauses are enforceable.  Primarily, 1-Stop contends the clauses are contained in boilerplate, non-negotiated, and unconscionable contracts of adhesion.  Creekridge filed a motion for leave to file a sur-reply to the motion to dismiss or, in the alternative, transfer to Rhode Island filed by Astonish.  Creekridge opposes transfer of the entire case to Rhode Island, rather arguing, if the entire case must be transferred anywhere, it should be to Minnesota.  In addition and in the alternative, Creekridge moves the Court to sever the case, allowing the claims against Creekridge to go to Minnesota and those against Astonish and Couture to go to Rhode Island.  1-Stop opposes severance.

Finally, 1-Stop filed a motion for leave to file a sur-reply to the Defendants' motions to dismiss, bringing to the Court's attention a recent case from the United States Supreme Court, which bears directly on enforcement of forum selection clauses and the issues of the case, *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568 (2013).

Considering the complicated venue issues and the recent precedent from the Supreme Court, this Court called a hearing in order to allow the parties to argue their respective positions and explain the impact of *Atlantic Marine* on the outcome of the pending motions in this matter.

## Analysis

### I.    Enforcement of Forum Selection Clauses and *Atlantic Marine*

### A.    Rule 12(b)(3) and 28 U.S.C. § 1406(a)

Section 1406(a) provides, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Rule 12(b)(3) states a party may move to dismiss a case for "improper venue." Therefore, these two provisions authorize dismissal only when venue is "wrong" or "improper" in the forum in which it was brought.

In the instant case, one of the grounds for Astonish's motion to dismiss or transfer, and for Creekridge's motion to dismiss or transfer, is a combination of § 1406(a) and Rule 12(b)(3). For the reasons explained below, however, *Atlantic Marine* rejects this mechanism as a proper means of enforcing a forum selection clause.

### B.    28 U.S.C. § 1391

Whether venue is "wrong" or "improper" for purposes of § 1406(a) and Rule 12(b)(3) is "generally governed by 28 U.S.C. § 1391." *Atl. Marine*, 134 S. Ct. at 577. Section 1391 provides: "[e]xcept as otherwise provided for by law . . . this section shall govern the venue of all civil actions brought in district courts of the United States." 28 U.S.C. § 1391(a). Subsection (b) further instructs:

> [a] civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

28 U.S.C. § 1391(b).

As the Court in *Atlantic Marine* noted, when a party challenges venue, a court must determine whether the case falls within one of the three situations described in § 1391(b). *Atl. Marine*, 134 S. Ct. at 577. "As a result, a case filed in a district that falls within § 1391 may not be dismissed under § 1406(a) or Rule 12(b)(3)." *Id.*

## C.    28 U.S.C. § 1404(a)

"Although a forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of § 1406(a) or Rule 12(b)(3), the clause may be enforced through a motion to transfer under § 1404(a)." *Id.* at 579. Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Section 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "There can be no question but that the district courts have 'broad discretion in deciding whether to order a transfer'" under § 1404(a). *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 313–15 (5th Cir. 2008) (quoting *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998)).

The preliminary question in a motion for transfer of venue is whether the suit could have been filed originally in the destination venue. *Id.* at 312. After determining the suit could have been filed in the destination venue, the Court must next focus on whether the party requesting the transfer has demonstrated the "convenience of parties and witnesses" requires transfer of the action,

considering various private and public interests.  *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1974).[1]

The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).  The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."  *Id.*  Although the *Gilbert* factors are "appropriate for most transfer cases, they are not necessarily exhaustive or exclusive"; indeed, the Fifth Circuit has noted "'none . . . can be said to be of dispositive weight.'"  *In re Volkswagen of Am.*, 545 F.3d at 313–15 (quoting *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)).  Despite the wide array of private and public concerns, a court must make a "flexible and individualized analysis" in ruling on a motion to transfer venue.  *Ricoh Corp.*, 487 U.S. at 29.

Though the above is similar to the standard in the *forum non conveniens* context, § 1404(a) requires a lesser showing of inconvenience.  *In re Volkswagen of Am.*, 545 F.3d at 314.  As such, the movant need not show the *Gilbert* factors *substantially* outweigh the plaintiff's choice of venue—it is enough to show the new venue is clearly more convenient than the original one.  *See id.*

---

[1] Although *Gilbert* dealt with *forum non conveniens*, the Fifth Circuit applies the "*Gilbert* factors" derived from it to the § 1404(a) setting.  *See In re Volkswagen of Am.*, 545 F.3d at 314 n.9.

Nonetheless, as the Supreme Court has cautioned, while the movant's burden is lessened, the plaintiff's choice of venue is still to be considered. *See Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). Accordingly, the Fifth Circuit's rule is that while the plaintiff's choice of venue is not a factor under *Gilbert*, it places a "significant" burden of proof upon the movant to "show good cause for the transfer." *In re Volkswagen of Am.*, 545 F.3d at 314 n.10. "Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.* at 315.

Finally, § 1404(a) operates as a safety valve of sorts, and serves to give corporations—which, due to their frequently pervasive contacts nationwide, are often subject to venue virtually anywhere—some recourse from the highly permissive general venue rule found in 28 U.S.C. § 1391. *See In re Volkswagen of Am.*, 545 F.3d at 313. "The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a)." *Id.* "Thus, while a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege." *Id.*

**C.     *Atlantic Marine***

To sum up so far, *Atlantic Marine* first establishes the determination of when venue is "wrong" or "improper" for purposes of § 1406(a) and Rule 12(b)(3) is governed by § 1391, and whether the parties' contract contains a forum selection clause has no bearing on whether a case satisfies one of § 1391's categories. In other words, forum selection clauses may not be enforced through § 1406(a) and Rule 12(b)(3); rather, a motion to transfer under § 1404(a) is a proper mechanism for forum selection clauses.

*Atlantic Marine* next outlines the approach district courts should take when faced with a § 1404(a) motion. In short, "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Atl. Marine*, 134 S. Ct. at 579 (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)). The Court made clear, while § 1404(a) motions are appropriate for forum selection clauses pointing to a federal forum, *forum non conveniens* is the proper doctrine for enforcing such clauses directing the case to a state or foreign forum.[2] *Id.* at 580.

The Court then proceeded to carefully describe the correct § 1404(a) analysis and the relevant burdens. As an initial matter, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.* at 581. In a § 1404(a) case where there is no forum selection clause at issue, the district court proceeds through the standard § 1404(a) analysis described above, but the Court in *Atlantic Marine* adjusted the § 1404(a) calculus in three important ways when there is a valid forum selection clause.

---

[2]While the Marketing Agreement points any disputes to state or federal court in Providence, Rhode Island, and the Lender Agreement points any disputes to state or federal court in Minnesota, none of the parties have made any arguments regarding *forum non conveniens* based on the notion the forum selection clauses allow for a state forum, i.e. a nonfederal forum. Because the clauses contemplate federal forums and because no party has raised any arguments based on *forum non conveniens*, this Court will presume the Defendants wanted their cases transferred to federal forums. Accordingly, the Court will analyze their forum selection clauses through § 1404(a). The Court also notes the significant overlap between § 1404(a) and *forum non conveniens*. *See Atl. Marine*, 134 S. Ct. at 580 ("[B]ecause both § 1404(a) and the *forum non conveniens* doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum."). Moreover, "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Id.*

First, "the plaintiff's choice of forum merits no weight." *Id.* "Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Second, the court "should not consider arguments about the parties' private interests." *Id.* at 582. Since the parties agreed ahead of time to the forum, they waive the right to challenge the preselected forum as inconvenient. *Id.* The court still, however, considers the public interest factors, but "[b]ecause those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.* Third, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Id.*

The Court summed up its position as follows:

> When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place. In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain.

*Id.* at 583.

With this new framework from *Atlantic Marine* in mind, this Court proceeds to analyze the Defendants' motions to dismiss or, in the alternative, transfer.

## II.   Astonish and Couture's Motion to Dismiss or, in the Alternative, Transfer

Defendants Astonish and Couture first ask the Court to dismiss the claims against them under Rule 12(b)(3) because venue in the Western District of Texas is "improper" based on the forum

selection clause. Given *Atlantic Marine*, however, Rule 12(b)(3) is not the proper means of enforcing a forum-selection clause, and Defendants' motion must be DENIED on these grounds.

Defendants alternatively move the Court to transfer pursuant to § 1404(a), which is a proper vehicle for enforcing a forum selection clause according to *Atlantic Marine*. The first question on a § 1404(a) motion is whether the suit could have been filed originally in the destination venue, and this lawsuit could have originally been filed in the United States District Court for the District of Rhode Island. Next, typically this Court would weigh the private and public interest factors, but *Atlantic Marine* altered the approach in three ways.

First, 1-Stop's selection of the Western District of Texas "merits no weight." The burden is on 1-Stop to establish transfer to the District of Rhode Island is unwarranted. 1-Stop makes no specific arguments suggesting transfer to the District of Rhode Island is unwarranted for any reason, and 1-Stop fails to meet its burden. Second, the Court does not consider any private interest factors but only public interest factors. Accordingly, none of 1-Stop's arguments concerning the cost of litigating in Rhode Island or access to proof are considered. 1-Stop perhaps has a few legitimate arguments when it comes to public interest factors. For instance, many of the events giving rise to this lawsuit occurred in Texas, so it might be argued this Court has a local interest in having such a dispute decided here where it originated. Also, 1-Stop argues transfer would result in an "egregious waste of judicial resources." These arguments, though, do not rise to a level sufficient to deny a motion to transfer. As the Court noted in *Atlantic Marine*, the public interest factors "will rarely defeat a transfer motion, [and] the practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine*, 134 S. Ct. at 582. There is nothing to indicate, nor does 1-Stop contend, this is an unusual case. 1-Stop fails to meet its burden and explain why the

Court should not hold it to the forum selection clause it agreed to when it signed the Marketing Agreement.

1-Stop's primary contention is the forum selection clause was never valid because it was contained in a contract of adhesion. A forum selection clause should not be enforced if it "is shown by the resisting party to be unreasonable under the circumstances." *Int'l Software Systems, Inc. v. Amplicon, Inc.*, 77 F.3d 112, 114 (5th Cir. 1996) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). 1-Stop cites to the Supreme Court's well-known *Carnival Cruise Lines v. Shute*, 499 U.S. 585 (1991), for the proposition forum selection clauses which are included in contracts of adhesion should not be enforced. Contracts of adhesion are "'form contracts offered on a take-or-leave basis by a party with stronger bargaining power to a party with weaker power.'" Pl.'s Resp. to Defs.' Astonish and Couture's Mot. to Dismiss [#24], at 3 (quoting *Carnival Cruise Lines*, 499 U.S. at 600 (Stevens, J., dissenting)). According to 1-Stop, Couture gave a two-hour sales presentation to 1-Stop, at the close which he told 1-Stop if it did not sign up immediately, it would not be able to buy Astonish's products and services. 1-Stop, under this supposed pressure, signed the Marketing Agreement five minutes after first gaining possession of it, without counsel present, and without counsel having an opportunity to review the contract. Moreover, 1-Stop points out the contract was completely drafted by Astonish with no input from 1-Stop. 1-Stop complains Couture did not tell it about the forum-selection clause, and 1-Stop was not aware it was in the Marketing Agreement when it signed. Based on these alleged circumstances, 1-Stop contends it "lacked a meaningful choice." *Id.* at 5.

1-Stop does not come to close to sufficiently demonstrating the forum selection clause was unreasonable under the circumstances as to be invalid. With respect to forum selection clauses, there

is a presumption of enforceability, and to overcome this presumption there must be a clear showing the clause is unreasonable under the circumstances. *Haynesworth v. The Corp.*, 121 F.3d 956, 962–63 (5th Cir. 1997) (citing *Bremen*, 407 U.S. at 10). A forum selection clause may be found unreasonable if:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Id.* at 963 (citing *Carnival Cruise Lines*, 499 U.S. at 595).

First, there is no allegation the incorporation of the forum selection was the product of fraud or overreaching. While 1-Stop argues its pleadings contain detailed allegations of fraud, none of them relate specifically to the inclusion of the forum selection clause. Rather, the fraud allegations relate more generally to representations made as to Astonish's performance of the contract and the alleged failure to meet those obligations. At most, 1-Stop merely claims Couture did not tell 1-Stop about the forum selection clause, but this is insufficient to support a fraud claim. Second, 1-Stop will not be denied its day in court if the case is transferred to Rhode Island. 1-Stop offers no arguments on the third and fourth factors, nor do they appear relevant to the instant case.

1-Stop's allegations simply do not support finding the inclusion of the forum selection was unreasonable, and they do not support concluding the Marketing Agreement was a contract of adhesion. 1-Stop is a sophisticated insurance agency and was in total control over whether to buy Astonish's products and services. At no point in time did 1-Stop have to sign any contract, no matter how much "pressure" the agent Couture may have applied by making Astonish's offer "take-it-leave-

it." 1-Stop's failure to take sufficient time to read the terms of the contract carefully or have counsel review them is nobody's fault but its own. 1-Stop cannot avoid poor business practice and decision-making by claiming this was a contract of adhesion. 1-Stop could have declined at any point to sign up for Astonish's program, but instead it signed a two-page contract where even a cursory five-minute review would reveal the presence of the forum selection clause.

1-Stop's arguments premised on the Marketing Agreement being a contract of adhesion fail, and it does not meet its burden establishing the forum selection clause is unreasonable. Consequently, the Court concludes the clause is valid. Furthermore, 1-Stop does not meet its burden on the § 1404(a) public interest factors. Therefore, the Court will enforce this valid forum selection clause and GRANT Astonish and Couture's § 1404(a) motion to transfer the claims against them by 1-Stop to the United States District Court for the District of Rhode Island.

## III.   Creekridge's Motion to Dismiss or, in the Alternative, Transfer

Defendant Creekridge filed a separate motion to dismiss, or, in the alternative, transfer based entirely on Rule 12(b)(3) and § 1406(a). In light of *Atlantic Marine* and for the reasons discussed above, this motion must be DENIED on these grounds. Unlike Defendants Astonish and Couture, Creekridge did not alternatively move to transfer the case against it based on § 1404(a). Creekridge did include in a footnote, however, the possibility their motion should be construed as a § 1404(a) motion to transfer depending on the eventual outcome of *Atlantic Marine*. *See* Mem. of Law in Support of Creekridge's Motion to Dismiss, or in the Alternative, to Transfer Venue [#11], at 2, n.2. Creekridge, in its Reply filed after the *Atlantic Marine* decision, noted the Supreme Court's position regarding the proper procedural mechanism for enforcing a forum selection clause. Accordingly, Creekridge requested the Court construe its motion to dismiss, or in the alternative, to transfer venue

-14-

pursuant to Rule 12(b)(3) and § 1406(a) as a motion to transfer venue under § 1404(a).  The Court will comply with this request and treat Creekridge's motion as a motion to transfer pursuant to § 1404(a).

Creekridge wants the Court to enforce the forum selection clause in the Lender Agreement, which provides 1-Stop, in signing the contract, "CONSENT[S] TO EXCLUSIVE JURISDICTION IN THE STATE OR FEDERAL COURTS OF MINNESOTA."  Lender Agreement, at 2.  The first question on a § 1404(a) motion is whether the suit could have been filed originally in the destination venue, and this lawsuit could have originally been filed in the United States District Court for the District of Minnesota.  Next, the Court proceeds with the § 1404(a) analysis as instructed by *Atlantic Marine*, and it is essentially identical to the above analysis discussing Astonish's and Couture's § 1404(a) motion except the transfer destination is Minnesota rather than Rhode Island.  In short, 1-Stop cannot show this is the type of unusual case with extraordinary circumstances which might merit not enforcing a forum selection clause.  1-Stop fails to meet its burden and explain why the Court should not hold it to the forum selection clause it agreed to when it signed the Lender Agreement.

Again, 1-Stop's primary contention is the forum selection clause was never valid because it was contained in a contract of adhesion, in this instance the Lender Agreement.  The arguments mirror exactly those made concerning the Marketing Agreement.  The one difference in the allegations against Creekridge is the claim "1-Stop became *contractually obligated* to enter into the Lender Agreement when 1-Stop entered into the Marketing Agreement on September 13, 2012, a week before 1-Stop had even seen the Lender Agreement."  Pl.'s Resp. in Opp'n to Def. Creekridge's Mot. to Dismiss, or in the Alternative, to Transfer Venue [#23], at 3.  1-Stop argues

-15-

the Marketing Agreement "expressly required 1-Stop to enter into 'a non-cancellable and freely assignable commercial finance payment agreement' and to 'execute all financing promptly upon request.'" *Id.* (quoting Lender Agreement, at 1). 1-Stop alleges Creekridge was "the only approved financing company option provided by Astonish to 1-Stop." *Id.* at 3–4. According to 1-Stop, if it had refused to enter into the Lender Agreement, it would have been in breach of the Marketing Agreement. *Id.* at 4. Similar to its claims regarding the Marketing Agreement, 1-Stop reiterates it had "no choice other than to sign the Lender Agreement regardless of its terms." *Id.*

1-Stop's arguments fail for multiple reasons. First, 1-Stop's characterization of the relationship between the Marketing Agreement and Lender Agreement is not accurate. The Marketing Agreement does not "expressly require" 1-Stop to enter into a finance agreement. Instead, the Marketing Agreement clearly provides a choice: (1) enter into a financing agreement, or (2) pay fully upfront in cash. *See* Marketing Agreement, at 1. 1-Stop apparently chose the financing option. Second, even if the Marketing Agreement did require entering into the Lender Agreement, this still does not demonstrate the Lender Agreement is a contract of adhesion. The fact remains 1-Stop was free to enter into—or not enter into—the Marketing Agreement. If 1-Stop failed to read the contract's terms, or failed to understand them, it is 1-Stop's fault. Again, poor business judgment does not make a contract one of adhesion.

In addition, 1-Stop does not come close to overcoming the forum selection clause's presumption of enforceability by sufficiently demonstrating the clause was so unreasonable as to be invalid under the *Haynesworth* factors. The analysis mirrors exactly the above analysis related to the Marketing Agreement. First, there is no specific allegation the incorporation of the forum selection was the product of fraud or overreaching. While 1-Stop argues its pleadings contain detailed

-16-

allegations of fraud, none of them relate specifically to the inclusion of the forum selection clause. Again, 1-Stop claims it was unaware of the Lender Agreement included a forum selection clause, but 1-Stop's failure to read a two page contract does not amount to fraud on Creekridge's behalf. Second, 1-Stop will not be denied its day in court if the case is transferred to Minnesota. 1-Stop offers no arguments on the third and fourth factors, nor do they appear relevant to the instant case.

1-Stop's allegations simply do not support finding the inclusion of the forum selection was unreasonable, and they do not support concluding the Lender Agreement was a contract of adhesion. To the extent 1-Stop's arguments echo its allegations regarding the Marketing Agreement, they are rejected. Moreover, 1-Stop's claim it was forced to enter into the Lender Agreement when it signed the Marketing Agreement is just false and would be irrelevant if true. Once again, 1-Stop is a sophisticated insurance agency capable of making complicated business decisions. While those decisions may have proved poor, 1-Stop cannot now escape the terms of the agreements it signed by claiming it had "no choice." 1-Stop had a choice all along despite its protestations to the contrary.

1-Stop's arguments premised on the Lender Agreement being a contract of adhesion fail, and it does not meet its burden establishing the forum selection clause is unreasonable. Consequently, the Court concludes the clause is valid. Furthermore, 1-Stop does not meet its burden on the § 1404(a) public interest factors. Therefore, the Court will enforce this valid forum selection clause and GRANT Creekridge's § 1404(a) motion to transfer the claims against it by 1-Stop to the United States District Court for the District of Minnesota.

IV.   **Creekridge's Motion to Sever**

Creekridge filed a motion for leave to file a sur-reply to Astonish's request the case be transferred to Rhode Island. Creekridge wants the claims against it to be handled in Minnesota under

-17-

the terms of the Lender Agreement. In the alternative, Creekridge moves the Court to sever the claims, sending the claims against Astonish and Couture to Rhode Island and those against Creekridge to Minnesota. Rule 21 of the Federal Rules of Civil Procedure provide, "the court may . . . sever any claim against a party." FED. R. CIV. P. 21. The Court, through the above analysis, has determined the two forum selection clauses are both valid and should be enforced. Therefore, severance is appropriate.

1-Stop opposes severance, arguing the claims against each of the Defendants arise out of the same transaction, severance would be a waste of judicial resources, and severance would severely prejudice 1-Stop. While 1-Stop may make be correct on all of its contentions, the undisputed record in this case shows it signed two separate contracts with two separate forum selection clauses. Notwithstanding the fact these claims are interrelated and separating them forces two different courts to handle similar cases, this Court cannot override the parties' contractual agreements. Moreover, any inconvenience or prejudice imposed on 1-Stop, or any other private interest factor, is not be considered in the § 1404(a) analysis given *Atlantic Marine*. 1-Stop could have avoided this entire dilemma if it had read and understood the contracts it signed.

Because 1-Stop's Marketing Agreement with Astonish and Couture requires disputes to be handled in Rhode Island, and 1-Stop's Lender Agreement with Creekridge requires disputes to be handled in Minnesota, the Court GRANTS Creekridge's motion to sever.

## Conclusion

Accordingly,

-18-

IT IS ORDERED that Defendants Astonish Results and Thomas Couture's Motion to Dismiss and Alternatively, Motion to Transfer Venue [#10] is DENIED IN PART and GRANTED IN PART, as described above;

IT IS FURTHER ORDERED that Defendant Creekridge Capital LLC's Motion to Dismiss, or in the Alternative, to Transfer Venue Pursuant to FRCP 12(b)(3) and 28 U.S.C. § 1406(a) [#11] is DENIED IN PART and GRANTED IN PART, as described above;

IT IS FURTHER ORDERED that Defendant Creekridge Capital's Motion for Leave to File Sur-Reply to Defendants' Motion to Dismiss, or in the Alternative, to Transfer Venue, and Motion to Sever [#29], and Plaintiff's Response [#33] is GRANTED, both with respect to the Motion for Leave and the Motion to Sever;

IT IS FURTHER ORDERED that Plaintiff 1-Stop's claims against Defendants Astonish Results and Thomas Couture are SEVERED from its claims against Defendant Creekridge Capital;

IT IS FURTHER ORDERED that Defendants Astonish Results and Thomas Couture's Motion to Stay Discovery and Motion for Protective Order [#35] is DISMISSED AS MOOT;

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to File Sur-Reply in Opposition to Defendants' Motions to Dismiss [#37] is GRANTED;

IT IS FURTHER ORDERED that Defendants Astonish Results and Thomas Couture's Motion to Transfer Venue [#10] is GRANTED, and the Clerk shall transfer this case, as it pertains to claims brought by Plaintiff 1-Stop against Defendants Astonish and Thomas Couture, to the United States District Court for the District of Rhode Island;

IT IS FURTHER ORDERED that Defendant Creekridge Capital LLC's Motion to Transfer Venue [#11] is GRANTED, and the Clerk shall transfer this case, as it pertains to claims brought by Plaintiff 1-Stop against Defendant Creekridge Capital, to the United States District Court for the District of Minnesota.

SIGNED this the ___23rd___ day of January 2014.



_Sam Sparks_
SAM SPARKS
UNITED STATES DISTRICT JUDGE